

U.S. Department of Justice

United States Attorney
Eastern District of New York

271 Cadman Plaza East
Brooklyn, New York 11201

JMK
F.#2008R00052

November 3, 2014

By ECF

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Salvester Zarzana
                Crim. Docket No. 12-264 (NGG)

Dear Judge Garaufis:

        The government submits this sentencing memorandum in anticipation of the defendant Salvester Zarzana's sentencing, which is scheduled for November 6, 2014 at 1:00 p.m. As detailed below, a sentence within the range of imprisonment set forth by the United States Sentencing Guidelines ("Guidelines") is appropriate here.

    I.    Background

        As detailed in the Presentence Investigative Report ("PSR"), on November 27, 2013, the defendant, a soldier in the Genovese organized crime family of La Cosa Nostra ("Genovese crime family") pleaded guilty before the Court to Count Four of the indictment, which charges him with extortion conspiracy, in violation of 18 U.S.C. § 1951(a), relating to work performed by John Doe #1 at a construction site in Brooklyn, New York. (PSR ¶ 1).

        In approximately 2006, co-defendant James Bernardone introduced co-defendant Paul Gasparrini to John Doe #1. (PSR ¶ 9). Between 2007 and 2009, John Doe #1 acted as a trucking broker for a variety of construction projects at the behest of Bernardone and Gasparrini. (PSR ¶ 9). In approximately mid-2006, John Doe #1 discussed with Bernardone the possibility of him partnering with the owner of a company called Ecology, a trucking company in New Jersey that specialized in removing contaminated soil. (PSR ¶ 10). In late 2006/early 2007, Gasparrini introduced John Doe #1 to the owner of a contracting company (the "contractor"). (PSR ¶ 10). The contractor was "controlled" by Zarzana, the president of Carpenters Union Local # 926 at the time. (PSR ¶ 10). Zarzana

obtained work at various construction sites for the contractor, who would then subcontract the removal of contaminated soil, which required the trucker to have a certain kind of license that the contractor did not have, to John Doe #1. (PSR ¶ 10). John Doe #1 would then partner with Ecology to remove the contaminated soil. (PSR ¶ 10). In order for John Doe #1 and Ecology to obtain the work, however, they had to provide a kickback to Gasparrini, who would, in turn, provide a portion of that money to Bernardone and others in the Genovese crime family. (PSR ¶ 10). As set forth below, in relation to at least one construction site, Gasparrini provided a portion of the kickback to Zarzana.

In June 2006, Gasparrini and John Doe #1 discussed the possibility of John Doe #1 working on a construction site located at the intersection of Gold Street, Johnson Street and Flatbush Avenue in Brooklyn, New York (the "Flatbush Avenue project"). (PSR ¶ 14). The general contractor of the Flatbush Avenue project was a company called JCI, and the subcontractor for the excavation and foundation work was a company called Racine. (PSR ¶ 14). Gasparrini told John Doe #1 that he (John Doe #1) and Ecology would provide contaminated soil removal services for Racine. (PSR ¶ 14). Gasparrini noted that Zarzana was "behind" John Doe #1 and Ecology getting the work at the site.[1] (PSR ¶ 14).

Gasparrini wanted more than his usual $2.00 per load "commission" from John Doe #1 and Ecology for work performed on the Flatbush Avenue project because he needed to "kick up" a portion of his proceeds to Genovese crime family members, including Bernardone and Zarzana, and Gasparrini wanted to make more money. (PSR ¶ 15). John Doe #1 performed contaminated soil removal at the job site. (PSR ¶ 16). Racine was slow to pay John Doe #1 and Ecology. (PSR ¶ 16). After multiple attempts to obtain money from Racine, Racine eventually paid John Doe #1 and Ecology the money owed to them for their work on the project. (PSR ¶ 16). John Doe #1 paid Gasparrini for his "influence" on the Racine project, and Gasparrini paid a portion of the money to Zarzana and Bernardone. (PSR ¶ 16). John Doe #1 understood that if he did not pay Gasparrini, Bernardone and Zarzana in connection with the Flatbush Avenue project, they would prevent him from obtaining work at other construction sites or possibly retaliate through violence.[2] (PSR ¶ 16).

II. Guidelines Calculation

In the PSR, the Probation Department ("Probation") calculated Zarzana's base offense to be 18 pursuant to § 2B3.2 of the Guidelines. (PSR ¶ 31). Probation included a two-point deduction pursuant to § 3B1.2(b) of the Guidelines because the defendant was a minor participation in the offense. (PSR ¶ 34). With a three-point reduction for timely

---

[1] As set forth in the PSR, Zarzana was also involved in obtaining work for Gasparrini and John Doe #1 at another construction site located at 23rd Avenue and Ditmas Boulevard in Queens, New York. (PSR ¶¶ 17-19).

[2] John Doe #1 did not receive any threats of violence from Zarzana.

acceptance of responsibility pursuant to §§ 3E1.1(a) and (b) of the Guidelines and a two-level global plea reduction pursuant to § 5K2.0 of the Guidelines,[3] Zarzana's adjusted offense level according to the PSR is 11. (PSR ¶¶ 38-40, 89). With a Criminal History Category of I, Zarzana's Guidelines range of imprisonment is 8 to 14 months. (PSR ¶¶ 43, 89).

   III.   <u>Zarzana's Sentence</u>

A sentence within the applicable Guidelines range of imprisonment is appropriate in this case. At the time that Zarzana participated in the instant offense, he was the President of Carpenters Union Local # 926 in Brooklyn, New York. Thus, instead of working solely to advocate for and protect workers at various construction sites throughout New York City, Zarzana abused his position by conspiring with Gasparrini and others to extort John Doe #1 at the Flatbush Avenue job site for the benefit of both the Genovese crime family and himself. While Zarzana clearly has medical issues that the Court should consider in determining Zarzana's sentence, the U.S. Bureau of Prisons ("BOP") routinely provides medical treatment to incarcerated individuals who have various health issues. Zarzana has not demonstrated here that the BOP is not equipped to provide adequate medical care to Zarzana if the Court sentences him to a term of imprisonment.

Organized crime's influence and control in the construction industry throughout New York City is well known and continues to this day. As the Court has noted during the sentencing proceedings of other defendants in this case, organized crime's continued grip on the construction industry is a cost and burden that we all continue to bear. A sentence within the Guidelines range specifically deters Zarzana from continuing to associate with organized crime, and sends a message to Genovese crime family members and associates that using their "influence" at various construction sites throughout New York City will not be tolerated.

                          Respectfully submitted,

                          LORETTA E. LYNCH
                          United States Attorney

            By:    /s/Jacquelyn M. Kasulis
                  Jacquelyn M. Kasulis
                  Amanda Hector
                  Assistant U.S. Attorneys
                  (718) 254-6103/6212

cc:   Joseph Mure, Esq. (via ECF and email)

---

[3] Zarzana and his co-defendants satisfied the conditions set forth in their plea agreements to warrant a two-point global plea reduction.

Jennifer Fisher, U.S. Probation Officer (via email)